# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PRESIDENTIAL BANK, FSB,                          :
                                                 :
    Plaintiff & Counter-Defendant,    :    Civil Action No.:   16-2412 (RC)
                                                 :
    v.                                :    Re Document Nos.:   17, 26, 29
                                                 :
1733 27TH STREET SE LLC, *et al.*,               :
                                                 :
    Defendants & Counter-Claimants.   :

## MEMORANDUM OPINION

**GRANTING DEFENDANTS' MOTION FOR LEAVE TO LATE FILE OPPOSITION TO PLAINTIFF'S
MOTION TO PARTIALLY DISMISS;
GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO PARTIALLY DISMISS
DEFENDANTS' COUNTERCLAIM;
DENYING AS MOOT DEFENDANTS' MOTION FOR LEAVE TO LATE FILE
OPPOSITION CONCERNING *LIS PENDENS***

## I. INTRODUCTION

Plaintiff, Presidential Bank, FSB, loaned money to Defendant and secured the loans with

real property owned by Defendants and rented to others. After Defendants defaulted on the loans,

the parties entered into several loan modification agreements. One of these agreements gave

Plaintiff significant control over Defendants' rental income. The modifications were unavailing

in restoring harmony to the lending relationship, however, and Plaintiff subsequently brought

suit alleging that Defendants had converted some rental income rather than turning it over to

Plaintiff. In response, Defendants lobbed a salvo of affirmative defenses and counterclaimed that

Plaintiff's execution of the modification agreements had, in fact, been wrongful and caused

Defendants' financial difficulties. Plaintiff now moves for this Court to dismiss Counts I, II, III,

V, VI, VII and IX of Defendants' counterclaim. Plaintiff does not move to dismiss Count IV or

VIII of the counterclaim. For the reasons stated below, the Court will grant Plaintiff's motion.

## II.  BACKGROUND

### A.  Factual Background

In resolving Plaintiff's motion to dismiss, the Court "assume[s] the truth of the factual allegations of the counterclaim and liberally construe[s] them in favor of [counter-claimants]." *Barnstead Broad. Corp. v. Offshore Broad. Corp.*, 886 F. Supp. 874, 878 (D.D.C. 1995). Defendants (and counter-claimants) are six District of Columbia limited liability companies[1] and Kevin Green. Defs.' Affirmative Defenses, Answers & Counter-Claims (Defs.' Answer) at 19–20, ECF No. 12. Mr. Green is an individual and "sole management-member of the counter-plaintiff Limited Liability Companies." Defs.' Answer at 20.

Plaintiff made various loans to each of the Defendant-LLCs, secured by various deeds of trust. ECF No. 20–23. Each Defendant-LLC owned associated real property which served as collateral on the loans. Compl. ¶¶ 24–34, ECF No. 1-1, Ex. A; *see also* Compl. ¶ 5, ECF No. 1-1, Ex. A. Defendants subsequently defaulted on the loans, and entered into a "Global Loan Modification Agreement" in October of 2014. Defs.' Answer at 23; *see also* Compl. ¶ 9. Pursuant to the Global Loan Modification Agreement, Defendants assert that Presidential later obtained a confessed judgment against Defendants in Maryland state court, which is currently pending appeal at the Maryland Court of Special Appeals. Defs.' Answer at 24. Problems between Plaintiff and Defendants persisted, and in 2015 the parties entered into a second modification agreement, the Forbearance Agreement.[2] Defs.' Answer at 25; *see also* Compl.

---

[1] The six limited liability companies are 1733 27th St. SE, LLC; 1729 27th St. SE, LLC; 40 Chesapeake St. SE, LLC; 2204 Prout St. SE, LLC; 4001 4th St. SE, LLC; and 1504 18th St. SE, LLC. Defs.' Answer at 19.

[2] The Court understands that many of the agreements concerning the managements of funds were memorialized in the Lockbox Agreements that the Forbearance Agreement was conditioned upon. Compl. ¶¶ 16–17 ("One of the conditions of entering into the Forbearance Agreement was that Borrowers execute lockbox and security agreements . . . for each of the

¶ 12; Forbearance Agreement, ECF No. 17-2. According to Defendants, the Forbearance

Agreement "gave Presidential total control over Borrowers' business," including "control of . . .

rental payments" made to Defendants by their tenants. Defs.' Answer at 25; *see also* Compl.

¶¶ 16–20.

Subsequent to the Forbearance Agreement, problems with paying the loans continued,

and Presidential eventually foreclosed on the properties. Defs.' Answer at 29. However,

Defendants claim that the income received by the properties should have been sufficient or

nearly sufficient to pay their mortgages. *See generally* Defs.' Answer at 26–27; *see also* Defs.'

Answer at 27 (stating that, based on "mortgage payments owed by Borrowers to Presidential"

and "Borrowers' Net Operating Income," "Borrowers would have a negative cash flow of only

$3,080.00"); Defs.' Answer at 27 ("For the better course of 2015 and early 2016, Presidential's

motive operandi [sic], based upon its perceived authority under the [Forbearance] Agreement,

was to block Borrowers' access to their funds; via their control of the Borrower's [sic] income,

to impede Borrowers from making timely mortgage payments; similarly delay or reverse timely

loan payments; apply payments retroactively to cover those payments they delayed or reversed . .

. ."). In 2016, Mr. Green also filed one or more complaints with the Office of the Comptroller of

Currency, alleging that Plaintiff had discriminated against Defendants on the basis of race in

violation of the ECOA. Defs.' Answer at 28; *see generally* ECF No. 12, Ex. C.

---

Collateral Properties. . . . Pursuant to the Lockbox Agreements, the respective rents for each of
the Collateral Properties were to be collected by the Borrowers and deposited directly into the
Operating Accounts controlled by Presidential."); *see, e.g.*, Lockbox and Security Agreement,
ECF No. 17-2.

## B. Procedural History

This matter began in D.C. Superior Court, where Plaintiffs asserted that Defendants had

wrongfully kept some of the rent paid by their tenants, and sought money damages and the

appointment of a receiver. *See generally* Compl., ECF No. 1-1, Ex. A. Defendants removed the

case to this Court. Errata to Notice of Removal, ECF No. 4.[3] Subsequently, Defendants

---

[3] Because this Court has previously commented on the citizenship of the parties, the
Court briefly addresses its jurisdiction. The Court previously noted that some statements in the
record indicated that Defendants had D.C. citizenship, while other statements suggested Virginia
citizenship. *See* Order Supp. Briefing, ECF No. 13 ("To establish Defendants' citizenship,
Plaintiff appears to rely on the statement in the Notice of Removal that 'Kevin Green is an
individual who is a resident of DC and each of the LLC properties [sic] sole member (Kevin
Green) resides in DC. Therefore, the Defendants are citizens of DC.' However, other documents
in the record suggest that Mr. Green resides in Virginia." (citations omitted)). These comments
were directed toward the potential application of the forum-defendant rule, which bars D.C.
residents from removing cases out of D.C. Superior Court and into this Court.
    However, the forum-defendant rule is not jurisdictional, and thus may be waived.
*Klayman v. Judicial Watch, Inc.*, 185 F. Supp. 3d 67, 71 (D.D.C. 2016) ("The [c]ourt first
considers whether the forum defendant rule is a jurisdictional rule. While the D.C. Circuit Court
of Appeals has not yet resolved this issue, other district judges in this District have concluded
that this rule is not jurisdictional. *See, e.g., Sae Young Kim v. Nat'l Certification Comm'n for
Acupuncture & Oriental Med.*, 888 F. Supp. 2d 78, 82 (D.D.C. 2012); *Taghioskoui v. George
Washington Univ.*, No. 12–1740, 2013 WL 2371248, at *1 (D.D.C. May 28, 2013). Similarly,
numerous other Circuit Courts have come to the same conclusion. *See Lively v. Wild Oats
Markets, Inc.*, 456 F.3d 933, 940 (9th Cir. 2006)." (parentheticals omitted)). Plaintiff asserted the
forum-defendant rule against removal in its motion to remand. Pl.'s Mot. Remand, ECF No. 3.
However, Plaintiff later withdrew the motion to remand. *See* Line Withdrawing Mot. Remand,
ECF No. 22 ("In light of the volume of pleadings that have been filed to date, together with this
Court's overall familiarity with the case, Presidential Bank believes that judicial efficiency is
better served by remaining in this Court and, accordingly, elects to waive any defects in the
Defendants' removal to this Court."). Plaintiff has thus waived any available objections under
the forum-defendant rule, and the Court does not consider them.
    The Court's jurisdiction in this matter arises from diversity jurisdiction. Amended Notice
Removal ¶ 5, ECF No. 4-2 ("This Court has . . . original diversity jurisdiction of this action
under 28 U.S.C. § 1332 because of the complete diversity of citizenship among the parties and
because the amount in controversy exceeds $75,000."). Diversity jurisdiction requires that the
dispute be "between . . . citizens of different States." *Simon v. Mitchell*, 199 F. Supp. 3d 244, 246
n.5 (D.D.C. 2016) (quoting 28 U.S.C. § 1332(a)(1)). It is undisputed that Plaintiff is a citizen of
Maryland. Compl. ¶ 1, ECF No. 1-1 ("Presidential is a federal savings bank incorporated under
the laws of the State of Maryland with its principal place of business in Bethesda, Maryland.");
Amended Notice Removal ¶ 2 (Upon information and belief, Plaintiff Presidential Bank, FSB is

unsuccessfully sought either that the case be stayed or that a temporary restraining order issue.

Defs.' Emergency Mot. Stay or Temp. Restraining Order, ECF No. 8; Minute Entry of January 6,

2017; Order, ECF No. 11 (denying Defendants' motion for a stay or temporary restraining

order). As an ancillary matter, Plaintiff filed an emergency motion requesting that this Court

cancel a *lis pendens*[4] recorded by Defendants, Pl.'s Emergency Mot. Order Canceling *Lis*

*Pendens*, ECF No. 15, and this Court granted the motion as conceded after Defendants failed to

oppose it.[5] Order, ECF No. 23.

Defendants answered Plaintiff's complaint and asserted multiple affirmative defenses and

the nine-count counterclaim at issue here. *See generally* Defs.' Answer. The nine counts of the

counterclaim argue, in various ways, that Plaintiff wrongfully used the Forbearance Agreement

to "intentionally, deliberately and maliciously force[] Borrowers' respective mortgage accounts

into delinquency."[6] Defs.' Answer at 25.

---

incorporated in Maryland as a Maryland corporation and maintains the Plaintiff Bank's headquarters, principle [sic] place of business and nerve center in Maryland. Therefore Plaintiff is a citizen of Maryland."). Even if Defendants are therefore Virginia citizens rather than citizens of D.C., jurisdiction exists.

[4] A *lis pendens* is a form of notice associated with a specific property and available under D.C. law. A *lis pendens* may be filed "if an action in 'state or federal court in the District of Columbia' either 'affect[s] the title to' or otherwise 'assert[s] a mortgage, lien, security interest, or other interest in real property situated in the District of Columbia.'" *McWilliams Ballard, Inc. v. Level 2 Dev.*, 697 F. Supp. 2d 101, 111 (D.D.C. 2010) (quoting D.C. Code § 42-1207(a) (2010)). The *lis pendens* serves "to enable interested third parties to discover the existence and scope of pending litigation affecting property." *Cordoba Initiative Corp. v. Deak*, 943 F. Supp. 2d 74, 75 (D.D.C. 2013) (quoting *McNair Builders v. 1629 16th St., L.L.C.*, 968 A.2d 505, 507 (D.C. 2009)).

[5] Defendants moved for reconsideration of the Court's order canceling the *lis pendens*, and for leave to file their opposition late. *See* Defs.' Mot. Recon. Court's Order, ECF No. 25; Defs.' Mot. Leave Late File Opp'n Pl.'s Emergency Mot., ECF No. 26. However, Defendants soon withdrew their motion for reconsideration. Praecipe Withdraw Mot., ECF No. 28. Because the underlying motion has now been withdrawn, the Court denies Defendants' motion to file their opposition concerning the *lis pendens* late as moot.

[6] The nine counts of the counterclaim proceeded as follows:

The Court now addresses Plaintiff's motion to dismiss Counts I, II, III, V, VI, VII, and IX of Defendants' counterclaim. Pl.'s Mot. Dismiss Counts I, II, III, V, VI, VII, & IX[7]; Defs.' Counterclaim, ECF No. 17; *see also* Mem. P. & A. Supp. Pl.'s Mot. Dismiss (Pl.'s Partial MTD), ECF No. 17-1. Defendants did not oppose this motion within time, but now move to for leave to late file their opposition, Defs.' Mot. Leave Late File Opp'n Pl.'s Mot. Dismiss, ECF No. 29, a motion which Plaintiff opposes, Pl.'s Opp'n Defs.' Mot. Late File Opp'n (Pl.'s Opp'n Leave File), ECF No. 30. Defendants' motion for leave to late file its opposition contained as an attachment Defendants' substantive opposition to Plaintiff's partial motion to dismiss, *see generally* Defs.' Mot. Leave File, Defs.' Mem. Opp'n Pl.'s Mot. Dismiss Counterclaim (Defs.' Opp'n), ECF No. 29-1, and Plaintiff's opposition to Defendants' motion for leave also contains Plaintiffs' substantive responses to Defendants' motion, *see generally* Pl.'s Opp'n Leave File. Therefore, having determined that Defendants should be granted leave to late file their opposition,[8] and having considered the substantive arguments presented in Defendants'

---

- Count I: Violations of the Equal Credit Opportunity Act, 18 U.S.C. § 1961 *et seq.*
- Count II: Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692(g)
- Count III: "Fraud Misrepresentation and Failure to Disclose"
- Count IV: Breach of Contract
- Count V: "Conflict of Interest, Breach of Covenant of Good Faith and Fair Dealing"
- Count VI: "Breach of Agency"
- Count VII: Negligence
- Count VIII: Tortious Interference with Contract Rights
- Count IX: "Breach of Fiduciary Duty, Embezzlement Mismanagement of Government Funds"

Defs.' Answer at 29–47.

[7] Other motions in this matter are also ripe, but the Court does not address them at present for the reasons stated on the record in the motions hearing of August 23, 2017.

[8] Pursuant to Federal Rule of Civil Procedure 6(b), a court may extend deadlines for good cause when a party "failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "[I]nadvertence, mistake, or carelessness" may qualify as excusable neglect. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 388 (1993); *see also* 4B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1165 (4th ed. 2015).

opposition and Plaintiff's responses to them, Plaintiff's motion to partially dismiss the counterclaim is ripe for adjudication.

## III. LEGAL STANDARD

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, a court construes the complaint in the light most favorable to the non-movant and accepts as true all reasonable factual inferences that can be drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994). The same standards are applicable when a plaintiff moves to dismiss a defendants' counterclaims. *Wharf, Inc. v. District of Columbia*, 232 F. Supp. 3d 9, 15–16 (D.D.C. 2017). In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted).

---

Here, the Court will permit Defendants to late-file their opposition. Plaintiff does not argue that it would be prejudiced by consideration of Defendants' opposition. ECF No. 30 at 1–2. Any delay will be negligible because the Court is now ready to turn to Plaintiff's motion to dismiss, and now has Defendants' opposition before it. Nor does Plaintiff identify any concrete reason to fear delay. Although Defendants admit that their failure to timely file their opposition was inadvertent, there is no evidence of bad faith. Considering the legal arguments from both sides will assist the Court, especially because the Court is hesitant to grant a motion to dismiss as conceded. *Cohen v. Bd. of Trustees of the Univ. of the D.C.*, 819 F.3d 476, 482 (D.C. Cir. 2016) (counseling against granting a motion to dismiss as conceded because it "risks circumventing the clear preference of the Federal Rules to resolve disputes on their merits"). The Court therefore grants Defendants leave to late file their opposition. *Cf. Cohen*, 819 F.3d at 479 (stating that the four factors to be considered in analyzing a Rule 6(b) motion are "(1) the risk of prejudice to the other side; (2) the length of the delay and the potential impact on judicial proceedings; (3) the reason for the delay and whether it was within counsel's reasonable control; and (4) whether counsel acted in good faith." (citations omitted)).

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) 'tests the legal sufficiency of a complaint,' or in this case, a counterclaim. The motion does not test a plaintiff's ultimate likelihood of success on the merits, but only forces the court to determine whether a plaintiff has properly stated a claim." *Boland v. Wasco, Inc.*, 50 F. Supp. 3d 1, 4–5 (D.D.C. 2014) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) and citing *ACLU Found. of S. Cal. v. Barr*, 952 F.2d 457, 467 (D.C. Cir. 1991)). In order to survive such a motion, the counterclaim must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). "The court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations." *Boland*, 50 F. Supp. at 5 (citing *Warren v. District of Columbia*, 353 F.3d 36, 39–40 (D.C. Cir. 2004)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## IV. DISCUSSION

Plaintiff moves to dismiss Counts I, II, III, V, VI, and IX of Defendants' counterclaim. The Court addresses each in turn.

### A. Count I—ECOA

Count I of Defendants' counterclaim raises three claims under the Equal Credit Opportunity Act (ECOA): race-based discrimination, income-based discrimination, and retaliation. Pl.'s Partial MTD at 3, ECF No. 17-1. Under the ECOA,

It shall be unlawful for any creditor to discriminate against any applicant with respect to any aspect of a credit transaction—

(1) on the basis of race [or] color . . .

(2) because all or part of the applicant's income derives from any public assistance program; or

(3) because the applicant has in good faith exercised any right under this chapter.

15 U.S.C. § 1691(a). Defendants argue that Plaintiff has discriminated against them in each of the three prohibited ways—on the basis of race, because of Mr. Green's race and the race of Defendants' tenants; on the basis of income, because many of Defendants' tenants receive public assistance; and on the basis of exercising rights, because Mr. Green complained to the Office of the Comptroller of Currency. Defs.' Answer at 29–35, ECF No. 12.

As a threshold matter, the Court addresses Plaintiff's argument that a discrimination claim under the ECOA requires the applicant to demonstrate an "adverse action." Subsection (d) of 15 U.S.C. § 1691 entitles an applicant to "a statement of reasons" from a creditor for any "adverse action" taken against the applicant, and provides a definition of an adverse action. *Id.* § 1691(d). Plaintiff asserts that the actions the Defendants complain of here, such as allegedly unfavorable terms in the Forbearance Agreement, are excluded from being adverse actions because the statutory definition does not include "a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit." *Id.* § 1691(d)(6); *see also* Pl.'s Partial MTD at 10 ("The Defendants' failure to allege that they were not in default of their loans is actually fatal to each of their ECOA claims. To prevail on any of their ECOA claims, the Defendants must show they suffered an adverse action.").

However, this Court doubts that the statutory definition of an adverse action must be met for an ECOA discrimination claim. Although some out-of-circuit courts have adopted the

interpretation of the statute endorsed by Plaintiff,[9] this Court is skeptical of their reasoning. First,

no court in this jurisdiction has advanced Plaintiff's view. Second, the definition of adverse

action appears in a separate subsection from the definition of a discrimination claim. The

definition of a discrimination claim does not reference the phrase "adverse action" at all, and in

fact refers to "a credit transaction" instead. Nor is the presence of a definition of adverse action a

mystery, because the statute contains a separate requirement in subsection (d) that creditors

notify applicants after taking adverse actions. Third, Plaintiff's view appears to contradict that of

other courts in this jurisdiction. In *Hildebrandt v. Vilsack*, 102 F. Supp. 3d 318, 323 (D.D.C.

2015), a court rejected a creditor's argument that "under the ECOA the [plaintiffs] must show

that they suffered an 'adverse action'" to state a discrimination claim. Instead, the court in

*Hildebrant* found that view to be "wrong, because it cites a subsection of the ECOA that has

---

[9] *See, e.g.*, *Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 624 (11th Cir. 2015) ("To be liable under the ECOA, a creditor must take an 'adverse action' against the plaintiff. [15 U.S.C.] § 1691(d). The Act defines 'adverse action' . . . . It also carves out exceptions for actions that are not considered 'adverse actions.' Among the actions not considered adverse is the refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default. *See id.* The regulations propagated under the ECOA similarly exclude from the definition of 'adverse action' any action or forbearance taken with respect to an account that is delinquent or in default. *See* 12 C.F.R. § 202.2(c)(2)(ii). It is undisputed that [the plaintiff] had already defaulted on her mortgage loan when she requested a loan modification. Under the plain language of the ECOA and its regulations, [the defendants'] refusal to allow [the plaintiff] to modify her loan, which was in foreclosure, does not constitute an adverse action and is therefore not actionable."), *cert. denied*, 136 S. Ct. 2465 (2016); *Stefanowicz v. SunTrust Mortg.*, No. 3:16-00368, 2017 WL 1103183, at *7–8 (M.D. Pa. Jan. 9, 2017), (rejecting a plaintiff's ECOA discrimination claim, in part because "[i]t is also clear from the facts alleged that [the plaintiff] was in default at the time of the alleged discrimination, under which circumstances the defendants' failure to allow her to modify her loan does not constitute a prohibited 'adverse action'" (citations omitted)), *report and recommendation adopted*, No. 3:16-CV-00368, 2017 WL 1079163 (M.D. Pa. Mar. 22, 2017); *Berry v. Wells Fargo*, No. 15-5269, 2015 WL 8601866, at *4 (N.D. Ill. Dec. 14, 2015) (rejecting a Plaintiff's ECOA discrimination claim because "the latest alleged 'credit transaction' that could qualify as an 'adverse action' under the ECOA was [the plaintiff's] November 2009 attempt to receive a loan modification. The foreclosure proceedings and all the allegations that accompany those proceedings do not fall within the 'adverse action' definition necessary to state an ECOA claim").

nothing to do with the statute's prohibition on discriminatory conduct. The term 'adverse action' appears in a subsection setting forth the statute's requirements for the provision of notice to a credit applicant. The ECOA's prohibition on discrimination, however, is provided in a different subsection of the statute, and is articulated in broad terms . . . ." *Id.* (internal citations omitted); *see also Love v. Johanns*, 439 F.3d 723, 732 (D.C. Cir. 2006) (rejecting plaintiffs attempt to state a claim under the ECOA based on an agency's failure to investigate their discrimination claims by interpreting the "credit transaction" language of the ECOA, not the definition of an "adverse action"). Therefore, it appears to this Court that discrimination in a credit transaction, not an adverse action, is the appropriate standard for a discrimination claim under § 1691(a). But, because Defendants' counterclaim fails regardless, the Court need not decide the adverse action issue here.

Plaintiff claims that Defendants fail to state a claim because "Defendants' discrimination claims are supported by nothing more than naked conclusory leaps; not any actual facts." Pl.'s Partial MTD at 3. The Court agrees that Defendants have insufficiently pled their claims of race-based and income-based discrimination.

Defendants describe their claim for race-based discrimination in only the most threadbare and conclusory fashion. *See, e.g.*, Defs.' Answer at 32 ("Based on information and belief, Presidential Bank treated Borrowers [sic] minority owned LLCs (African American) and the Guarantor (African American) different [sic] than they treated their white commercial credit applicants."); Defs.' Answer at 32 ("Based on information and belief, Presidential Bank as a creditor acted with specific intent to discriminate against Borrowers . . . . Presidential Bank's racially discriminatory activities occurred before, during, and after the extension of credit and extension of forbearance agreements . . . . Based upon information and belief, Presidential's

'disparate treatment' can be found through comparing the treatment of Borrowers as applicants who receive different treatment than non-minority borrowers for no discernable reason other than a prohibited basis such as race or color."); Defs.' Answer at 33 ("Borrowers [sic] African American race and association with low-income African American tenants . . . was a substantial motivating reason for Presidential's decision to refused [sic] to offer Borrowers unfair credit and unconscionable forbearance terms . . . .").

These claims are precisely the "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that the Supreme Court has held are insufficient to state a claim. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Defendants present no facts from which they could conclude that race was a factor in Plaintiff's treatment of them. *See also BEG Investments, LLC v. Alberti*, 34 F. Supp. 3d 68, 85 (D.D.C. 2014) ("[G]eneralized claims of discrimination cannot survive a motion to dismiss if not supported by alleged facts." (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Defendants do not provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Indeed, Defendants' allegation that, for example "Presidential Bank as a creditor acted with specific intent to discriminate against Borrowers," Defs.' Answer at 32, is nothing more than a legal conclusion, and is thus "not entitled to the assumption of truth," *Iqbal*, 556 U.S. at 680, *see also id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Having identified Defendants' conclusory statements, there are no well-

pleaded factual allegations remaining to support Defendants' claim of race-based discrimination, and dismissal is therefore appropriate.[10]

Of course, obtaining direct evidence of discrimination, especially prior to discovery, may be difficult. The Supreme Court has considered analogous concerns. For example, *Twombly* dealt with antitrust, where it can be difficult to establish whether conduct is the result of an agreement or independent action. The Supreme Court required the plaintiff to "place[ the complaint] in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 557. Other courts have since concluded that this requirement may be met by, for example, "provid[ing] some circumstantial facts, including historical supply and consumption levels, market prices, profit levels, and the use the industry reports, to support an inference that the defendants engaged in not merely parallel conduct." *City of Moundridge v. Exxon Mobil Corp.*, 250 F.R.D. 1, 5 (D.D.C. 2008). As the Supreme Court noted in *Iqbal*, a case in which the plaintiff had attempted to sufficiently plead purposeful and unlawful discrimination, "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

---

[10] Although the Court notes that its decision may appear in tension with the D.C. Circuit's holding in the employment discrimination context that "all a complainant ha[d] to say to survive a motion to dismiss under Rule 12(b)(6)" was something to the effect of "I was turned down for a job because of my [protected status]." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000). The D.C. Circuit's holding in *Sparrow* drew from *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), which the Supreme Court has since abrogated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See, e.g.*, *Jackson v. Acedo*, 08-cv-1941, 2009 WL 2619446, at *4 (D.D.C. Aug. 26, 2009) (concluding that "*Sparrow* is no longer binding authority in light of" *Twombly*); *Ali v. D.C. Gov't*, 697 F. Supp. 2d 88, 92 (D.D.C. 2010) (describing the "questions that [have] arise[n] about the continued validity of *Sparrow* in light of *Twombly* and *Iqbal*").

Here, analogously, the counterclaim is devoid of any circumstantial facts, history, or context which would support an inference that Plaintiff acted for discriminatory reasons.

Similarly, Defendants' allegations of income-based discrimination likewise fail to state a claim. *See, e.g.*, Defs.' Answer at 34 ("Presidential allowed the condition of the collateral properties to deteriorate because of Presidential's callous disregard for the African American tenant and African American neighborhood in which borrowers' properties were located. . . . Borrowers [sic] tenants [sic] source of income, African American race and association with low-income African American neighborhoods were substantial motivating reasons for Presidential's decision to refuse to repair borrowers' properties."). Like Defendants' allegations of race-based discrimination, these are merely conclusory statements which the Court must not grant the assumption of truth.

The Court rejects out of hand Defendants' implications that Plaintiff seeks to force them to establish a *prima facie* case at the motion to dismiss stage.[11] Defs.' Opp'n at 3–4, ECF No. 29-1. Likewise, the requirements of *Twombly* and *Iqbal* do not represent a "heightened pleading standard." Defs.' Opp'n at 3–4. Finally, Defendants argue that *Iqbal* and *Twombly* do not apply to their claims. Defs.' Opp'n at 5–7. However, the Supreme Court has clearly stated that its holding should not be so cabined by subject-area. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Respondent first says that our decision in *Twombly* should be limited to pleadings made in the context of an antitrust dispute. This argument is not supported by *Twombly* and is incompatible with the Federal Rules of Civil Procedure. Though *Twombly* determined the

---

[11] Contrary to Defendants' implications, the Court does not reach the applicability of the *McDonnell-Douglas* burden-shifting framework or apply that framework to reach its conclusion here that Defendants have failed to state a claim on which relief can be granted. *Cf.* Defs.' Opp'n at 7–8.

sufficiency of a complaint sounding in antitrust, the decision was based on our interpretation and application of Rule 8. That Rule in turn governs the pleading standard 'in all civil actions and proceedings in the United States district courts.' Our decision in *Twombly* expounded the pleading standard for 'all civil actions, and it applies to antitrust and discrimination suits alike." (internal citations omitted)).

Unlike their claims of race-based and income-based discrimination, Defendants have sufficiently pled their allegations that they were retaliated against. Plaintiff again argues that Defendants' counterclaim fails because Defendants have not alleged an adverse action under the statutory definition. Pl.'s Partial MTD at 9–10. However, for the reasons set forth above, it is not clear to the Court that it is the statutory definition of an adverse action that would trigger the notification requirement that is relevant for determining whether a party has pled a claim for retaliation. Thus, absent further briefing on the issue, the Court does not dismiss the portion of Count I of Defendants' counterclaim that alleges retaliatory discrimination based on Defendants' complaints.[12]

## B. Count II—FDCPA

Count II of Defendants' counterclaim asserts claims under the Fair Debt Collection Practices Act (FDCPA). Defs.' Answer at 35. Plaintiff argues that Count II should be dismissed because Plaintiff is not a debt collector. Pl.'s Partial MTD at 11. Defendants have stipulated their agreement that this count be dismissed. *See generally* Defs.' Opp'n at 1 ("Defendants hereby

---

[12] Plaintiff also argues that Defendants' ECOA claims must be dismissed because "Defendants expressly waived any such claim in the Forbearance Agreement itself." Pl.'s Partial MTD at 7. However, because this argument implicitly relies on the validity of the Forbearance Agreement, and this Court has stayed this action while the Maryland Court of Special Appeals addresses a case which may affect the validity of the Forbearance Agreement, the Court declines to dismiss on this ground. If appropriate, Plaintiff may of course renew its motion to dismiss on this ground.

concede its allegations based on the Fair Debt Collections Practices Act while maintaining the remaining counts as clarified herein."). The Court therefore grants Plaintiff's motion to dismiss Count II of Defendants' counterclaim.

### C. Count III—Fraud

Count III of Defendants' counterclaim asserts that Plaintiff engaged in fraudulent misrepresentation by "knowingly misstat[ing] material facts and knowingly conceal[ing] material facts, which it has a duty to disclose and upon which the borrower has relied." Defs.' Answer at 36. Plaintiff argues that Count III should be dismissed because it stems from the same factual basis as the alleged breach of the Forbearance Agreement described in Count IV. Pl.'s Partial MTD at 11–12; *see also* Pl.'s Partial MTD at 12 ("It is well established in the District of Columbia that a litigant may not take what is plainly a breach of contract claim and morph it into a tort claim for fraud.").

Defendants do not contest Plaintiff's legal argument, but assert in their opposition that "Plaintiff's fraud began before the forbearance agreement was signed; there was fraud in the inducement in addition to the fraud predicated upon contractual duties." Defs.' Opp'n at 10. According to Defendants, "Plaintiff in its capacity as banker induced Defendants to enter into the Forbearance Agreement with fraudulent and false misrepresentations that it would not foreclose upon Defendants' properties and that it would manage said properties in the proper manner thereby preserving the value of Defendants' assets." Defs.' Opp'n at 11.

However, Count III of Defendants' counterclaim—unlike Defendants' opposition—does not allege fraud in the inducement, or refer to any allegedly fraudulent conduct at all prior to the signing of the Forbearance Agreement. *See, e.g.*, Defs.' Answer at 36 ("Presidential Bank negligently represented facts to Borrows and the court when Presidential represented that

Borrowers defaulted on their mortgages."); Defs.' Answer at 36 ("As the receiver of Borrowers' rental income Presidential Bank failed to provide Borrowers any accounting or accountability."); Defs.' Answer at 37 ("Presidential Bank did not permit Borrowers to withdraw funds to pay budgeted project expenses or to provide for debt service payments . . . ."); Defs.' Answer at 36–37 ("Presidential Bank . . . intentionally failed to pay Borrowers' mortgages . . . ."); *see also* Pl.'s Opp'n Leave File, ECF No. 30 at 6 ("Defendants fail to cite any paragraph in their Counterclaim where they allegedly make any such allegations [about fraud in the inducement]. That is because the Counterclaim states nothing of the sort."). Defendants have neither sought nor received leave to amend their counterclaim, and may not expand its scope through their opposition. *See, e.g.*, *Haynes v. Navy Fed. Credit Union*, 52 F. Supp. 3d 1, 8 (D.D.C. 2014) ("[A] party may not amend its complaint or broaden its claims through summary judgment briefing." (collecting citations)). Therefore, the Court will dismiss Count III of Defendants' counterclaim, and if Defendants wish to assert fraudulent inducement they must move for leave to amend their counterclaim.

### D.  Counts V, VI, VII, IX

Count V of Defendants' counterclaim asserted that Plaintiff had a conflict of interest when it both was the lender and decided how to make payments on the loans, and that Plaintiff assumed a "fiduciary duty" toward Defendants that it breached by not acting in good faith with is handling of rental income and the rental properties. Defs.' Answer at 40–42. Count VI claims that "Presidential created an agency relationship" with Defendants when it "assumed control of Borrowers' business" and then breached this relationship by its mismanagement of the properties and the rental income. Defs.' Answer at 43. Count VII argues that Plaintiff was negligent because it "failed to perform its duties with reasonable care and in a manner consistent with the

standards of the banking industry" through its mismanagement of the rental funds and properties. Defs.' Answer at 43. Count IX argues that "Presidential's actions breached various duties including fiduciary, trust and agency" through mismanaging the rental income. Defs.' Answer at 46.

Plaintiff argues that Counts V, VI, VII, and IX of Defendants' counterclaim are "a breach of contract claim with other names" and should therefore be dismissed as duplicative of Defendants' actual breach of contract claim (which is contained Count IV). Pl.'s Partial MTD at 12–14. "As a matter of judicial economy, courts should dismiss claims that are duplicative of other claims." *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 81–82 (D.D.C. 2010) (citing *McGee v. District of Columbia*, 646 F. Supp. 2d 115, 121–22 (D.D.C. 2009) and *Park v. Hyatt Corp.*, 436 F. Supp. 2d 60, 66 (D.D.C. 2006)). "Duplicative claims are those that stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available." *Wultz*, 755 F. Supp. 2d at 82 (citing *McGee*, 646 F. Supp. 2d at 121–22).

Count IV of the counterclaim alleges that Plaintiff committed breach of contract by, *inter alia*, "fail[ing] to disburse lockbox account funds to timely pay Borrowers' mortgages," which violated the Forbearance Agreement and caused Borrowers to default. Defs.' Answer at 38. Defendants also argue that Plaintiff "allowed Borrowers' insurance to lapse," "withheld or delayed payment of 'Approved Expenses' requested by Borrowers [and] necessary for the preservation of the properties," and "failed to apply payments to the principal balance of the Notes." Defs.' Answer at 39. In short, Defendants argue that Plaintiff breached the Forbearance Agreement by mis-allocating Defendants' payments, causing Defendants a bevy of harms, including default, deteriorating conditions in the properties, and lapsed insurance.

Defendants do not defend Counts V, VI, or VII of their counterclaim from Plaintiff's assertion that they are duplicative of Count IV. Because Defendants do not respond to Plaintiff's arguments concerning these counts, Defendants have waived any objection, and dismissal is therefore appropriate. The Court further notes, that, in its independent judgment, Counts V, VI, and VII are duplicative of the breach of contract claim contained in Count IV of Defendants' counterclaim.[13]

Defendants *do* argue that at least part of Count IX is not duplicative. According to Defendants, the "Mismanagement of Government Funds is a separate allegation distinct from the breach of contract claims previously set forth." Defs.' Opp'n at 11. Mismanagement of Government Funds is one of several assertions contained in Count IX of Defendants' counterclaim. *See* Defs.' Answer ¶¶ 109–16. Although the thrust of Count IX is difficult to discern, the text of Count IX appears to rely entirely on past portions of the counterclaim describing the wrongful actions taken by Plaintiff. *See, e.g.*, Defs.' Answer at 46 (arguing that "[a]s stated hereinabove, Presidential's actions breached various duties including fiduciary, trust and agency' and "[a]s a direct and proximate result of Presidential's actions, Borrowers have

---

[13] Counts V, VI, and VII of Defendants' counterclaim each essentially restate the same claims that Plaintiff wrongfully violated the Forbearance Agreement by misdirecting funds. Count V of Defendants' counterclaim argues that Plaintiff's breach "illuminated the conflict [of interest] when it breached the covenant of good faith and fair dealing, using its 'sole discretion' to not pay borrowers' loans thus intentionally placing Borrowers in default." Defs.' Answer at 41; *see also* Defs.' Answer at 42 ("[I]t was Presidential that caused the arrearages, the lack of insurance coverage and failure to maintain the buildings in proper order that led to the so-called default."). Count VI of Defendants' counterclaim argues that Plaintiff created and then breached an agency relationship with Defendants by "assum[ing] control of the Borrowers' business" and then "fail[ing] to manage the rental revenue, fail[ing] to pay expenses and fail[ing] to maintain the rental properties." Defs.' Answer at 43. Count VII of Defendants' counterclaim argues that Plaintiff was negligent in "fail[ing] to account to Borrowers for its funds, fail[ing] to timely pay Borrowers' mortgages, fail[ing] to pay for services rendered by Borrowers' vendors and fail[ing] to pay for Borrower's insurance premiums." Defs.' Answer at 44.

suffered significant harm"); Defs.' Answer at 47 (asserting, vaguely, that "Presidential engaged in a course of action causing Borrower's business to fail" without detailing any specific allegations). These claims therefore appear to duplicate the prior counts of the counterclaim, themselves duplicative of Count IV for breach of contract.

Furthermore, Defendants argue only that the claim that Plaintiff misused government funds is unique. *See* Defs.' Opp'n at 11–12. This phrase appears in precisely two locations in the counterclaim—in the heading for Count IX, which reads "Breach of Fiduciary Duty, Embezzlement Mismanagement of Government Funds" and in paragraph 113, which states "As a direct and proximate result of Presidential's actions, Borrowers have suffered significant harm *and the government may have been defrauded out of hundreds of thousands of dollars*." Defs.' Answer at 46 (emphasis added). This oblique reference would be subject to dismissal for failing to meet the pleading standards of Rule 8 even if it were not duplicative. *Cf. Eastland v. Bush*, No. 91-2769, 1991 WL 262154, at *1 (D.D.C. Nov. 26, 1991) ("Rule 8 requires that the complaint contain a 'short and plain statement' of the plaintiff's claims. This statement need not use formal legal language; however, it must be clear and understandable. The purpose of this requirement is to give the defendant clear notice of what plaintiff is seeking so that the defendant may adequately defend himself or herself.").[14] Defendants state no cause of action, nor do they

---

[14] Because Defendants allege that Plaintiff may have "defrauded" the government out of hundreds of thousands of dollars, it is likely that the heightened pleading standard of Fed. R. Civ. P. Rule 9(b) applies. Rule 9(b) requires that a party "state with particularity the circumstances constituting fraud or mistake." As Defendants did not even meet Rule 8(a)'s pleading standard with this allegation, they have also failed to meet Rule 9(b)'s heightened standard. *See Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 113 n.37 (D.D.C. 2010) ("[B]ecause the plaintiffs do not satisfy even the pleading standard of Rule 8(a), it is unnecessary to apply the requirements of Rule 9(b), even if the defendants' position that Rule 9(b) controls is correct.").

explain how they would have standing to pursue a claim that *the government* was defrauded.[15] Defendants may not amend their counterclaim by stealth through their opposition to Plaintiff's motion to partially dismiss. *See, e.g.*, *Haynes v. Navy Fed. Credit Union*, 52 F. Supp. 3d 1, 8 (D.D.C. 2014) ("[A] party may not amend its complaint or broaden its claims through summary judgment briefing." (collecting citations)).

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Partially Dismiss Defendants' Counterclaim (ECF No. 17) is **GRANTED IN PART** and **DENIED IN PART**, Defendants' Motion for Leave to Late File Opposition Concerning *Lis Pendens* (ECF No. 26) is **DENIED AS MOOT**, and Defendants' Motion for Leave to Late File Its Opposition to Plaintiff's Motion to Partially Dismiss Defendants' Counterclaim (ECF No. 29) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 22, 2017                                  RUDOLPH CONTRERAS
                                                                          United States District Judge

---

[15] Even in their opposition, it is unclear if Defendants are simply predicting that the government may bring some type of prosecution, or attempting to raise a civil RICO claim. *See* Defs.' Opp'n at 11 ("[T]he truth of this allegation may trigger additional charges, particularly under the federal RICO provisions . . . the government would pursue and potentially hold Defendants liable . . . .").