## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PRESIDENTIAL BANK, FSB,          :
:
      Plaintiff & Counter-Defendant,    :    Civil Action No.:    16-2412 (RC)
:
      v.               :    Re Document Nos.:    47, 48
:
1733 27TH STREET SE LLC, *et al.*,    :
:
      Defendants & Counter-Claimants.    :

## MEMORANDUM OPINION

### GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING PLAINTIFF'S MOTION TO STRIKE JURY DEMAND

## I. INTRODUCTION

This suit arises from a fraught lending relationship between Plaintiff & Counter-Defendant Presidential Bank, FSB ("Presidential") and Defendants & Counter-Claimants Kevin Green and six LLC that he owns ("Defendants"). Between 2006 and 2010, Presidential made a series of loans to Defendants secured with real property that Defendants owned. Beginning in 2014, Defendants struggled to make payments in compliance with their agreements with Presidential, and ultimately defaulted on their loans. The parties entered into several modifications to the lending agreements. One such modification was a forbearance agreement, whereby Presidential agreed not to collect the money Defendants owed it until April 2017 in exchange for, among other things, receiving significant control over Defendants' rental income. When Defendants defaulted again, Presidential demanded that Defendants pay all of the money they owed under the Forbearance Agreement.

Presidential pursued two avenues of relief against Defendants: first, it filed a claim for a confessed judgment in Maryland state court, and second, it filed suit in D.C. Superior Court for

conversion of the funds it should have had access to pursuant to a lockbox agreement contained in the Forbearance Agreement. The D.C. suit also sought the appointment of a receiver to operate, manage, and control Defendants' properties. Defendants subsequently removed the case to this Court. Defendants responded to Presidential's claims with twelve affirmative defenses and nine counterclaims against Presidential. Since then, the Circuit Court of Montgomery County, Maryland has entered a confessed judgment against Defendants, and the Maryland Court of Special Appeals has denied Defendants' motion to vacate it for lack of personal jurisdiction. Based on the Court of Special Appeals's ruling, Presidential has moved to strike the jury demand contained in Defendants' Answer and Counterclaim, and for partial summary judgment on eleven of Defendants' twelve affirmative defenses and on its first claim for relief in its counterclaim. For the reasons set forth below, the Court grants both of Presidential's motions.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Defendants in this suit are six District of Columbia limited liability companies and Kevin Green, the sole management-member of the six LLCs. *See* Defs.' Affirmative Defenses, Answers & Counter-Claims ("Answer") at 19–20, ECF No. 12. Between 2006 and 2010, Plaintiff Presidential Bank made several loans to each of the LLCs, secured by deeds of trust and with each Defendant-LLC-owned apartment building serving as collateral on the loans. Compl. ¶¶ 24–34, ECF No. 1-1; *see also* Compl. ¶ 5. When Defendants defaulted on the loans in 2014, they entered into a "Global Loan Modification Agreement." Answer at 23; *see also* Compl. ¶ 9. However, in June 2015, Defendants again defaulted on the Global Loan Modification Agreement when they failed to make each of their loans current by January 15, 2015. Compl. ¶ 11; Answer at 23. To cure this default, Defendants and Presidential entered into a forbearance agreement in August 2015. Defs.' Answer at 25; *see also* Compl. ¶ 12; Forbearance Agreement, ECF No. 17-

2. Under the terms of the Forbearance Agreement, Presidential agreed to delay collecting the amount due under the loans until April 1, 2017, *see* Forbearance Agreement at 5, and in exchange, Defendants entered into a contract that contained a confessed judgment provision, a lockbox agreement, and a waiver of the right to a jury trial in any dispute arising out of the Forbearance Agreement or the underlying loans. Answer at 24; Forbearance Agreement at 5, 9. The confessed judgment provision allowed Presidential's attorneys, upon any subsequent default by Defendants, to obtain a judgment in Presidential's favor from the Circuit Court in Montgomery County, Maryland for "the amount of the unpaid principal balance of the notes together with any accrued and unpaid interest, late charges and attorneys' fees and costs incurred by the lender, together with all other costs and expenses incurred or accrued and unpaid under this agreement." Forbearance Agreement at 9. Under the lockbox agreement, Defendants agreed to "continue to deposit all deposits in their possession, including but not limited to rents, relating to the Collateral Properties directly into" operating accounts controlled by Presidential. *Id.* at 5. The lockbox agreement also set the priorities for how those funds would be spent. *Id.* at 5–6; Answer at 24.

In May 2016, Defendants defaulted on the Forbearance Agreement. Compl. ¶ 13; Answer at 28–29. Defendants were given until June 6, 2016, to cure their default. Compl. ¶ 14. When Defendants did not cure their default, Presidential declared all of Defendants' debt from the Forbearance Agreement, notes, guaranty, and deeds of trust due. *Id.* ¶ 15. Around that time, Defendants stopped depositing money into the operating accounts in alleged violation of the lockbox agreement. Compl. ¶ 21.

Following this deterioration in the lending relationship, Presidential sought the confessed judgment specified in the Forbearance Agreement, and was awarded $3,314,295.63 by the

Montgomery County Circuit Court on June 27, 2016. *See* Confessed Judgment, ECF No. 48-3. It

also filed suit in D.C. Superior Court on July 18, 2016, seeking damages for conversion of the

money it believed Defendants should have still been depositing in the operating account pursuant

to the lockbox agreement, as well as the appointment of a receiver. *See generally* Compl. In

December 2016, Defendants removed the case to this Court based on the diversity of citizenship.

*See* Notice of Removal, ECF No. 1. Once the case had been removed, Defendants filed an

emergency motion to stay the impending foreclosure sale of its properties or, in the alternative,

for a temporary restraining order. *See* Defs.' Emergency Mot. Stay, ECF No. 8. The Court

denied Defendants' motion. *See* Order, ECF No. 11. Defendants subsequently answered

Presidential's complaint with twelve affirmative defenses and nine counterclaims. *See generally*

Answer. Defendants' Answer also requested that the Court "[f]ind the Forbearance Agreement

referenced herein unconscionable and void *ab initio*." Answer at 47. Defendants informed the

Court that following its denial of Defendants' motion to stay, Defendants' properties were sold

on January 26, 2017. *Id.* at 29

These two suits—one in Maryland state court and one in D.C. federal court—proceeded

concurrently for more than a year. Following the entry of the confessed judgment, Defendants

moved to vacate it, arguing "primarily that judgments by confession are disfavored in Maryland,

and [that] the circuit court lacked personal jurisdiction over them because neither Mr. Green nor

any of the LLCs had sufficient ties to Montgomery County." Mot. Strike Ex. 14 ("Md. Op.") at

3, ECF No. 47-16. The circuit court judge was unpersuaded, given that the confessed judgment

provision in the Forbearance Agreement included a forum-selection clause, and declined to

vacate the judgment. *Id.* at 4. He further explained that he "searched in vain for the allegation of

a potentially meritorious defense" to the confessed judgment, but "never heard, never read in any of the documents that were submitted, what this meritorious defense to the note might be." *Id.*

Defendants appealed, but the Maryland Court of Special Appeals affirmed the lower court's refusal to vacate the confessed judgment in February 2018. *Id.* at 10. The Court of Special Appeals highlighted that "absent fraud, duress, or mutual mistake, 'a party who signs a contract is presumed to have read and understood its terms and . . . the party will be bound by them when that document is executed.'" *Id.* at 8 (quoting *Dashiell v. Meeks*, 913 F.2d 10, 20 (Md. 2006)). It explained that "[a]lthough Mr. Green contended, at oral argument, that the forum selection clause was not freely negotiated, he did not make that assertion before the circuit court or in his brief, and he submitted no evidence in support of that claim. Because the contention was not made below, it [wa]s not before [the Court of Special Appeals] for appellate review." *Id.* at 8 n.5. All in all, the Court of Special Appeals concluded that "the borrowers are bound [by] the terms of the forbearance agreement, including the clause consenting to personal jurisdiction by the circuit court." *Id.* at 10.

While the Maryland Court of Special Appeals's decision was pending, Defendants' filed a motion to stay these proceedings, which was granted. *See* Mot. to Stay, ECF No. 36; Minute Order (Aug. 23, 2017). Now that the Court of Special Appeals has affirmed the lower court's ruling and the stay has been lifted, Presidential has moved for summary judgment on eleven of Defendants' twelve affirmative defenses, as well as its first request for relief, on the grounds that these defenses and the request are precluded by the Maryland state court judgment. *See* Pl.'s Renewed Mot. Partial Summ. J. ("Pl.'s Mot."), ECF No. 48. It has also moved to strike Defendants' demand for a jury trial in its Answer, arguing that Defendants voluntarily waived that right in the Forbearance Agreement. *See* Pl.'s Mot. Strike, ECF No. 47. Defendants argue in

response that the Maryland court judgment has no preclusive effect on its affirmative defenses or its demand for a jury trial because neither Defendants' arguments in favor of its jury demand nor any of its affirmative defenses "rest on the nexus of unconscionability and 'confessed judgment.'" Defs.' Mem. Opp'n Pl.'s Renewed Mot. Partial Summ. J. ("Defs.' Opp'n Summ. J.") at 2, ECF No. 50. Presidential's motions are now ripe for decision.

## III.  MOTION FOR PARTIAL SUMMARY JUDGMENT

Presidential now seeks to avail itself of any preclusive effect its success in obtaining the confessed judgment in Maryland might have on this case. As such, it has filed a motion for summary judgment on eleven of Defendants' twelve affirmative defenses—all but breach of contract—as well as Defendants' request that this Court void the entire Forbearance Agreement, on the theory that Defendants missed their chance to proffer these defenses and this request when they did not raise them in Maryland. For the reasons set forth below, the Court grants Presidential's motion for partial summary judgment.

### A.  Legal Standard

Federal Rule of Civil Procedure 56 provides that a court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those capable of affecting the substantive outcome of the litigation, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute regarding those facts is "genuine" if there is enough evidence on the record for a reasonable jury to find for the non-movant, *Scott v. Harris*, 550 U.S. 372, 380 (2007).

On summary judgment, the movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P.

56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324. The purported dispute may not be based on mere allegations—rather, the non-movant must present affirmative evidence demonstrating that there is indeed a genuine dispute. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). However, all underlying facts and inferences must be analyzed in the light most favorable to the non-movant. *See Liberty Lobby*, 477 U.S. at 255.

### B. Analysis

Upon the Maryland Court of Special Appeals's affirmance of the Circuit Court's denial of Defendants' motion to vacate the confessed judgment, Presidential moved for partial summary judgment on eleven of Defendants' twelve affirmative defenses, as well as their first request for relief—that the Court "[f]ind the Forbearance Agreement . . . unconscionable and void *ab initio*." Pl.'s Mem. P. & A. Supp. Pl.'s Renewed Mot. Partial Summ. J. ("Pl.'s Mem.") at 1, ECF No. 48-1. Presidential argues that "Defendants' efforts to challenge the enforceability of the forbearance agreement in this Court ignores the fact that the Montgomery County Circuit Court (the "Circuit Court") has already held that the forbearance agreement is enforceable," thereby precluding Defendants from raising defenses and requests stemming from that contention that could have been raised in the prior proceedings. *Id.* at 1–2. Defendants respond that "Plaintiff's reasoning is flawed because it ignores the extent to which Defendants' affirmative defenses stand independent of and do not rely on the question of unconscionability as a result of the 'confessed judgment.'" Defs.' Opp'n Summ. J. at 1. However, Defendants do concede that "should an affirmative defense rest on the nexus of unconscionability and [the] 'confessed judgment,' that defens[]e should be stricken." *Id.* at 2. As explained below, the Court finds that Defendants' first

request for relief—that the Forbearance Agreement be found unconscionable and void— is precluded by res judicata. Additionally, the Court finds that all of Defendants' challenged affirmative defenses must also be stricken because they are precluded by the Maryland judgment.

"The plea of [res judicata] applies, except in special cases, not only to the points upon which the court was required by the parties to form an opinion, and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time." *Cromwell v. County of Sac*, 94 U.S. 351, 358 (1876). "Res judicata literally means 'a thing adjudicated,' and generally indicates 'an affirmative defense barring the same parties from litigating a second lawsuit on the same claim, or any other claim arising from the same transaction or series of transactions and that could have been—but was not—raised in the first suit.'"[1] *Lizzi v. Wash. Metro. Area Transit Auth.*, 862 A.2d 1017, 1022 (Md. 2004) (quoting Black's Law Dictionary 1336–37 (8th ed. 2004)); *see also Alvey v. Alvey*, 171 A.2d 92, 94 (Md. 1961) ("The doctrine of res judicata is that a judgment between the same parties and their privies is a final bar to any other suit upon the same cause of action, and is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety could have been litigated in the first suit."); *Mackall v. Zayre Corp.*, 443 A.2d 98, 102 (Md. 1982) (stating that "if a proceeding between parties involves the same cause of action as a previous proceeding between the same

---

[1] "It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). As such, federal courts must accept the res judicata rules "chosen by the State from which the judgment is taken." *Marrese v. Am. Acad. Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (internal quotation marks and citation omitted). Because in this case the Court is evaluating the preclusive effect of a Maryland state court judgment, it analyzes the preclusive effect of the judgment using Maryland law.

parties, the principle of res judicata applies and all matters actually litigated or that could have

been litigated are conclusive in the subsequent proceeding"). The doctrine "avoids the expense

and vexation attending multiple lawsuits, conserves the judicial resources, and fosters reliance on

judicial action by minimizing the possibilities of inconsistent decisions." *Murray Int'l Freight*

*Corp. v. Graham*, 555 A.2d 502, 503–04 (Md. 1989) (quoting *Montana v. United States*, 440

U.S. 147, 153–54 (1979)). Whether res judicata applies to a particular action is a question of law.

*See Davidson v. Seneca Crossing Section II Homeowner's Ass'n, Inc.*, 979 A.2d 260, 279 (Md.

Ct. Spec. App. 2009).

  "Under Maryland law, the elements of res judicata, or claim preclusion, are: (1) that the

parties in the present litigation are the same or in privity with the parties to the earlier dispute; (2)

that the claim presented in the current action is identical to the one determined in the prior

adjudication; and, (3) that there has been a final judgment on the merits." *Anne Arundel Cty. Bd.*

*of Educ. v. Norville*, 887 A.2d 1029, 1037–38 (Md. 2005).

  Here, the parties are clearly the same: Presidential Bank, Mr. Green, and six of his LLCs.

*See* Compl. at 1; Md. Op. at 1. Additionally, under Maryland law, "a judgment by confession is

'entitled to the same faith and credit, as any other judgment'" for res judicata purposes.

*Schlossberg v. Citizens Bank*, 672 A.2d 625, 627 (Md. 1996) (quoting *Keiner v. Commerce Trust*

*Co.*, 141 A. 121, 122 (Md. 1927)); *see also Howard Oaks, Inc. v. Md. Nat'l Bank*, 810 F. Supp.

674, 676 (D. Md. 1993) ("Confessed judgments are judgments on the merits, entitled to

preclusive effect under Maryland law . . . ." (citing *Boyce v. Plitt*, 335 A.2d 101, 103 (Md.

1975)). However, the question of whether Defendants have presented the same claims or

defenses[2] in this case as were at issue, or could have been at issue, in the confessed judgment case requires further exploration.

"To determine whether two suits involve the same 'cause of action,' for res judicata purposes, Maryland courts have traditionally applied the so-called 'same evidence' test." *Snell v. Mayor of Havre de Grace*, 837 F.2d 173 (4th Cir. 1988) (citing *MPC, Inc. v. Kenny*, 367 A.2d 486, 489 (Md. 1977)). "Under this test, as stated, the second suit is barred if the evidence necessary to support a verdict for the plaintiff in it would have been sufficient to sustain a judgment for him in the first suit." *Id.* (citing *Klein v. Whitehead*, 389 A.2d 374, 384 (Md. Ct. Spec. App. 1978)). Additionally, "if the two claims or theories are based upon the same set of facts and one would expect them to be tried together ordinarily, then a party must bring them simultaneously. Legal theories may not be divided and presented in piecemeal fashion in order to

---

[2] While more commonly used as an affirmative defense, res judicata may be used offensively when appropriate. *See, e.g.*, *Brown v. Felsen*, 442 U.S. 127, 131 (1979) ("Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceedings."); *Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320, 1324, 1328 (Fed. Cir. 2008) (holding that petition for cancelation of trademark that had been awarded through default judgment was precluded because the petition's effect was to collaterally attack a judgment in an infringement action); *In re Garcia*, 313 B.R. 307, 312 (B.A.P. 9th Cir. 2004) (holding that claim preclusion applied to a default judgment, and that, under the doctrine of merger, debtors were barred from asserting defenses that should have been raised in the prior proceeding); *Boston Post Road Med. Imaging, P.C. v. Allstate Ins. Co.*, 221 F.R.D. 410, 412 (S.D.N.Y. 2004) (barring defendant's petition for cancelation of trademark that had been awarded through default judgment as precluded because the petition's effect was to collaterally attack a judgment in an infringement action). However, use of offensive res judicata is rare, and Maryland courts have yet to explicitly find for a party attempting to use it offensively. *See Suryan v. CSE Mortg, L.L.C.*, No. 0452, 2017 WL 3667657, at *15 (Md. Ct. Spec. App. Aug. 25, 2017); *but see Norville*, 887 A.2d at 1038 (citing approvingly to *GLF Constr. Corp. v. LAN/STV*, 414 F.3d 553, 555 n.2 (5th Cir. 2005) ("claims and defenses" are the same for res judicata purposes when they arise from a "common nucleus of operative facts")). Defendants have not challenged Presidential's offensive use of res judicata, and as explained below, the inconsistency that could result from not precluding these affirmative defenses warrants the use of res judicata in this scenario.

advance them in separate actions." *Norville*, 887 A.2d at 1038 (citing *Comm'r Internal Revenue v. Sunnen*, 333 U.S. 591, 597 (1948)); *see also Kent Cty. Bd. of Educ. v. Bilbrough*, 525 A.2d 232, 238 (1987) (citing Restatement (Second) of Judgments § 24 ("What factual grouping constitutes a 'transaction', and what groupings constitute a 'series', are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.")). This proposition derives from "the sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered[] in adversarial proceedings." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991); *accord Colandrea v. Wilde Lake Comty. Ass'n*, 761 A.2d 899, 909 (Md. 2000).

"When a prior court has entered a final judgment as to the matter sought to be litigated in a second court, the claim analysis is usually uncomplicated . . . . It is when a court has not ruled upon a matter directly that the analysis becomes more complex, 'for then the second court must determine whether the matter currently before it was fairly included within the claim or action that was before the earlier court and could have been resolved in that court.'" *Norville*, 887 A.2d at 1038 (quoting *FWB Bank v. Richman*, 731 A.2d 916, 927 (Md. 1999)). The Court is faced with the latter predicament here.

Presidential seeks to use a confessed judgment in Maryland court, which Defendants had ample opportunity to challenge, to bar certain affirmative defenses and remedies that it argues could have been litigated in Maryland. As explained above, the confessed judgment ordered Defendants to pay Presidential the principal on the loans it received from the bank, as well as interest, late fees, inspection and repair costs, escrow fees, and attorneys' fees. *See* Confessed

Judgment at 2, ECF No. 48-3. The confessed judgment did not, on its face, apply to any other agreement in the contract.

Maryland courts have applied the transaction test to contract disputes on many occasions. For example, in *Patel v. HealthPlus, Inc.*, the Maryland Court of Special Appeals found that a plaintiff doctor's fee disputes with a Health Maintenance Organization with which he had contracted were precluded by an earlier suit with fee claims based in the same contract because "ample means existed for all of the fee disputes to have been tried as a single case." 684 A.2d 904, 918 (Md. Ct. Spec. App. 1996). Because the fee claims in the first lawsuit were of the same nature and based in the same contract as the fee claims in the second suit, and because the fee claims raised in the second suit could have easily been brought during the earlier suit, and all these claims together would undoubtedly have constituted a "convenient trial unit," the plaintiff doctor could not be allowed to pursue this second set of identical claims. *Id.* Conversely, in *Shum v. Gaudreau*, the Maryland Court of Appeals held that a landlord's prior summary ejectment action seeking repossession of a leased property and unpaid rent did not preclude a second suit seeking damages for the cost of repairing the property after the ejectment. 562 A.2d 707, 710, 716 (Md. 1989). Even though the basis of both suits was a single lease, and therefore, the cases' "facts [were] related in time, space, [and] origin," and even though it would have been convenient to try both cases together, the Court found that, because the landlord's claim for contract damages could not have been properly joined procedurally with his summary ejectment case, the first suit did not preclude the landlord from bringing the second. *Id.*

Under the Forbearance Agreement, the confessed judgment clause applied only to "the amount of the unpaid principle balance of the notes together with any accrued and unpaid interest, late charges and attorneys' fees and costs incurred by the lender, together with all other

costs and expenses incurred or accrued and unpaid under the agreement." Forbearance

Agreement at 9. The lockbox agreement at issue in this case was provided for in a separate part

of the contract, and was not enforceable through a confessed judgment. However, the lockbox

agreement was necessarily related to the confessed judgment provision, because the money

placed in the operating accounts pursuant to the lockbox agreement were designated to be used

to pay off Defendants' debt to Presidential. *See* Forbearance Agreement at 5–6. Therefore, the

Court must determine whether any of the affirmative defenses Defendants have raised seeking

the invalidation of the entire Forbearance Agreement, or, in the alternative, the lockbox

agreement, could have been raised and properly litigated in the prior case challenging the

confessed judgment.

"A confession of judgment clause in a debt instrument is a device designed to facilitate

collection of a debt. It is a provision by which debtors agree to the entry of judgment against

them without the benefit of a trial in the event of default on the debt instrument." *Schlossberg*,

672 A.2d at 627 (citing Paul V. Niemeyer & Linda M. Schuett, Maryland Rules Commentary at

464 (2d ed. 1992)). "Because the widespread practice of including a provision authorizing a

confessed judgment in promissory notes lends itself to fraud and abuse, however, [the Maryland

Court of Appeals] has made clear that judgments by confession are to be freely stricken out on

motion to let in defenses." *Id.* (internal citation and quotation marks omitted).

If a defendant moves to "open, modify or vacate" a confessed judgment, the circuit court

must determine whether there is a "substantial and sufficient basis for an actual controversy as to

the merits of the action." Md. Rule 2–611(d), (e). This means that the court must determine

whether the defendant has a "potentially meritorious defense" to the confessed judgment.

*Schlossberg*, 672 A.2d at 627–28. "The court does not, however, decide the merits of the

controversy at this stage . . . . If the court finds that a prima facie basis for a defense exists, the rule requires the court to order that the confessed judgment be opened, modified, or vacated so that the defendant can file a responsive pleading to the plaintiff's complaint and the merits can be determined." *Id.* at 628 (citing Maryland Rules Commentary at 466 and Md. Rule 2–611(d)); *see also Nils, LLC v. Antezana*, 912 A.2d 45 (Md. Ct. Spec. App. 2006). "Maryland debtors, to open a confessed judgment 'are merely required to meet a standard that is a minimal obstacle.'" *Shafer Bros. v. Kite*, 406 A.2d 673, 677 (Md. Ct. Spec. App. 1979) (quoting *Billingsley v. Lincoln Nat'l Bank*, 320 A.2d 34, 38 (Md. 1974)).

Usually, "it is not until after the judgment has in fact been vacated or opened that any other pleading, such as a counterclaim, can properly be docketed in the confessed judgment case." *Boyce v. Plitt*, 335 A.2d 101, 104 (Md. 1975). However, Maryland courts do not always follow this sequential rule. *See, e.g.*, *Albert W. Sisk & Son, Inc. v. Friendship Packers, Inc.*, 604 A.2d 69 (Md. 1992) (circuit court allowed defendants to file a counterclaim before vacating a judgment and accepted answer afterwards). A meritorious defense to a confessed judgment challenges either "(1) the execution of the promissory note itself or (2) the amount of debt due on the note." *Nils, LLC v. Antezana*, 912 A.2d 45, 52 (Md. Ct. Spec. App. 2005). Possible defenses to a confessed judgment include: (1) the note was executed under duress; (2) the terms of the agreement are unconscionable; and (3) the contract is one of adhesion. *See id.* at 52–53. "If, by contrast, it is alleged that the manifold misdeeds of the holder created financial pressure on the obligor to make what would otherwise qualify as a voluntary promissory note, that is not what Rule 2–611(c) contemplates as a 'defense to the claim.' Few persons ever gratuitously execute promissory notes as mere exercises in generosity. They generally do so out of financial exigency,

but if the act of executing the promissory note is a voluntary one, Rule 2–611(c) does not require us to look behind it." *Id.* at 52.

As explained above, Defendants moved to vacate the confessed judgment primarily on the ground that the Circuit Court in Montgomery County lacked personal jurisdiction over them. *See* Md. Op. at 1. They also argued that confessed judgments are disfavored in Maryland, *see id.* at 3, and that the confessed judgment language in the Forbearance Agreement was therefore unconscionable. *See* Defs.' Opp'n Summ. J. at 1. The Circuit Court held that it in fact had personal jurisdiction over Defendants, and denied their motion to vacate. Md. Op. at 4. It also explained that it "searched in vain for the allegation of a potentially meritorious defense" to the confessed judgment, "[a]nd there was some language about . . . a potentially meritorious defense, but [Defendants' briefing] didn't say what it was." *Id.* It continued that it "never heard, never read in any of the documents that were submitted [] what this meritorious defense to the note might be." *Id.*

Defendants appealed the denial of the motion to vacate on jurisdictional grounds only, and the Court of Special Appeals affirmed the Circuit Court's findings. *See id.* at 6–7. In particular, the Court of Special Appeals explained that "absent fraud, duress, or mutual mistake, 'a party who signs a contract is presumed to have read and understood its terms and . . . the party will be bound by them when the document is executed.'" Md. Op. at 8 (quoting *Dashiell v. Meeks*, 913 A.2d 10, 20 (Md. 2006)). Because the court did not believe that any of these exceptions applied in this case, it "conclude[d] that the borrowers are bound [by] the terms of the forbearance agreement, including the clause consenting to personal jurisdiction by the circuit court." *Id.* at 10.

To resolve Presidential's motion for summary judgment, this Court must determine whether the Court of Special Appeals's ruling that the terms of the Forbearance Agreement, including the confessed judgment clause, are enforceable also applies to the Forbearance Agreement's lockbox provision. Presidential argues that this decision leaving the confessed judgment in place precludes Defendants from raising any of the affirmative defenses they could have raised to challenge the confessed judgment, which the Maryland courts have already deemed lawful and enforceable. Defendants' primary counterargument is that the majority of their affirmative defenses do not "rely on the question of unconscionability as a result of the "confessed judgment." Defs.' Opp'n Summ. J. at 1. They claim that their "position is supported by a plain reading of the affirmative defenses as well as documents that have been provided through discovery." *Id.* at 1–2. They further argue that their defenses are not precluded by the confessed judgment because Presidential's actions "went beyond the realm of the unconscionable and extended into the stratosphere of banker liability." *Id.* at 3.

However, as explained above, res judicata applies not only to claims and defenses that were raised in a prior case, but all of those claims and defenses that *could* have been raised as well. *See Cromwell v. County of Sac*, 94 U.S. 351, 358 (1876) ("The plea of [res judicata] applies, except in special cases, not only to the points upon which the court was required by the parties to form an opinion, and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time."). Therefore, this Court must decide whether each of the affirmative defenses raised could have been raised in the prior Maryland proceedings.

Defendants' first affirmative defense is duress. *See* Answer at 1–2. Defendants claim that when they entered the Forbearance Agreement, they had received "threats of harm" from

Presidential "made to compel [them] to immediately sign the forbearance and lockbox agreements against their will and judgment." Defs.' Genuine Issues of Material Facts in Dispute ("Defs.' SMF") at 2, ECF No. 50. They argue that for that reason "everything flowing from the Forbearance Agreement should be deemed null as Borrowers are entitled to rescind or set aside the forbearance and lockbox agreements, rendering them void and voidable in equity." *Id.* This request parrots Defendants' first claim for relief in their counterclaim, on which Presidential has also moved for summary judgment. *See* Answer at 47.

Defendants' arguments fail for two reasons. First, the Court cannot void the entire Forbearance Agreement without nullifying the confessed judgment in Maryland, which was derived from the Forbearance Agreement. Under Maryland law, if the original defendant's permissive counterclaim would "nullify" the prior judgment or impair the rights the prior judgment created, then claim preclusion bars the subsequent raising of the counterclaim. *See, e.g.*, *Mostofi v. Midland Funding, LLC*, 117 A.3d 639, 644–45 (Md. Ct. Spec. App. 2015) ("When a party is sued, and that party could bring a permissive counterclaim, he or she is not required to 'raise or waive' that counterclaim unless successful prosecution of it would nullify the other party's claim."); *Rowland*, 577 A.2d at 57 (suggesting that claim preclusion would apply if ruling in the second case would nullify the initial judgment or would impair rights established in the initial judgment). As Maryland courts have yet to explicitly recognize offensive res judicata, this principle has not yet been applied to affirmative defenses that, should they be proven, would nullify a prior court judgment. However, because the effect of a finding of duress in this case would have the same effect of nullifying the Maryland Court of Special Appeals's implicit finding that the Forbearance Agreement was not entered into under duress as any counterclaim challenging the validity of the Forbearance Agreement, the same principal that

Maryland courts have applied to nullifying counterclaims should be applied to nullifying affirmative defenses as well. If Defendants had wanted to challenge the confessed judgment because they believed they had entered into the Forbearance Agreement under duress, they had ample opportunity to move to vacate the confessed judgment on that basis. And, if their motion based on duress was successful, they would have had the opportunity to fully litigate the question of whether the confessed judgment provision, and even the entire Forbearance Agreement,[3] should be voided on that basis. For this reason, the Court finds that Defendants' first affirmative defense, duress, is barred by res judicata.

Defendants' second affirmative defense, undue influence, similarly could have been raised as a defense once the confessed judgment had been vacated and the case had proceeded to trial, though undue influence would not have on its own served as a ground to vacate the confessed judgment. *See, e.g.*, *Nils, LCC v. Antezana*, 912 A.2d 45, 52 (Md. Ct. Spec. App. 2006) ("If, by contrast, it is alleged that the manifold misdeeds of the holder created financial pressure on the obligor to make what would otherwise qualify as a voluntary promissory note, that is not what Rule 2–611(c) contemplates as a 'defense to the claim.' Few persons ever

---

[3] Defendants have not raised the argument that even though the Maryland courts found that no meritorious defense existed as to the confessed judgment, other portions of the forbearance agreement were procured through different impermissible means, and therefore, while the confessed judgment clause was not procured under duress, other portions of the contract were. Indeed, Defendants' eleventh affirmative defense, contract of adhesion, was asserted on the grounds that "Presidential gave borrowers a standard form, take-it-or-leave[-it] forbearance and lockbox contract of adhesion, where the terms and conditions of the contracts were set by Presidential, and borrowers had little or no ability to negotiate more favorable terms." Answer at 8. These allegations imply that the entire contract was procured through one process, and no one clause was treated differently than any other. Of course, defendants are allowed to raise conflicting defenses when responding to a complaint. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.") However, without any allegations to the contrary, the Court assumes that the forbearance agreement was considered and signed as a single unit.

gratuitously execute promissory notes as mere exercises in generosity. They generally do so out of financial exigency, but if the act of executing the promissory note is a voluntary one, Rule 2–611(c) does not require us to look behind it.") Because Defendants have not alleged that Presidential pursued a separate attempt to unduly influence Defendants into signing the lockbox agreement as opposed to the confessed judgment portion of the Forbearance Agreement, a finding of undue influence in this case would directly conflict with the finding of the Maryland Circuit Court when it entered the confessed judgment. Therefore, Defendants are precluded from raising this defense.

The Court next turns to the defense of unclean hands. Under Maryland law, "[i]t is only when the plaintiff's improper conduct is the source, or part of the source, of his equitable claim, that he is to be barred because of this conduct. What is material is not that the plaintiff's hands are dirty, but that he dirties them in acquiring the right he now asserts." *Adams v. Manown*, 615 A.2d 611, 617 (Md. 1992) (quoting D. Dobbs, Remedies § 2.4, at 46 (1973)). Defendants allege that "Presidential is not entitled to obtain any equitable remedies because Presidential is acting unethically and has acted in bad faith by lying and concealing the fact that Borrowers had sufficient funds controlled by Presidential to timely pay mortgages and insurance." Answer at 3. In effect, Defendants are accusing Presidential of lying and causing them to default on the Forbearance Agreement, leading to the confessed judgment. As such, this defense stems from Defendants' allegedly fraudulent conduct after the signing of the Forbearance Agreement, rather than before. However, it is clear that the "unclean" conduct at issue in Defendants' Answer affects both the confessed judgment clause and the lockbox agreement. Defendants claim that Presidential's fraudulent behavior caused it to default on its loan for a third time on June 6, 2016. *See* Answer at 3; *see also* Compl. at 7–9 (describing the timeline for Defendants' defaults and

timeline of its breach of the lockbox agreement). Presidential also identified June 6, 2016, as the

date that Defendants stopped depositing funds into the lockbox operating account. *See* Compl. at

9. It is clear both from Presidential's timeline and the fact that Defendants do not distinguish

between the "unclean" conduct as it relates to the confessed judgment provision and the lockbox

agreement, that the basis for Defendants' unclean hands defense is the same basis for the unclean

hands defense it could have raised in Maryland. Because the Maryland courts, by refusing to

vacate the confessed judgment, have implicitly found that no "unclean" conduct caused

Defendants' to default on their loans, thereby entitling Presidential to the confessed judgment,

the Court is precluded from allowing the defense to go forward here.

Next the Court turns to Defendants' fourth, sixth, and seventh affirmative defenses—

misrepresentation, fraudulent misrepresentation, and negligent misrepresentation, respectively.

*See* Answer at 3–5. These defenses are based on Defendants' assertion that

> Presidential made the false material statement to Borrowers that if
> Borrowers signed the forbearance agreement that Presidential would
> not foreclose on borrowers' properties and would help borrowers
> manage their properties and insure that borrowers' mortgages,
> insurance and other property business expenses were paid on time.
> These material statements acted to induce borrowers to sign the
> forbearance and lockbox agreements.

Answer at 3. Defendants assert that these defenses are not barred by the Maryland judgment

because these defenses "do[] not speak to the unconscionability of the agreement based on the

'confessed judgment' language." Defs.' SMF at 11. However, as explained above, Defendants

had the opportunity, when challenging the Maryland confessed judgment, to raise additional

defenses challenging the validity of the confessed judgment or the entire Forbearance

Agreement. Maryland courts have recognized misrepresentation as a grounds of vacating a

confessed judgment. *See e.g.*, *Cardwell-Fisher Fixture Co. v. Commerce Trust Co.*, 141 A. 121,

125 (Md. 1927) (finding that the trial court below should have vacated a confessed judgment because the defendant pleaded sufficient facts demonstrating that she signed a contract due to plaintiff's fraudulent misrepresentations); *see also Alger Petroleum, Inc. v. Spedalere*, 573 A.2d 423, 432 (Md. Ct. Spec. App. 1990) (holding that trial court abused its discretion by not vacating a confessed judgment when the defendant had presented "satisfactory proof" that it had signed a contract due to fraudulent misrepresentation). As explained above, Defendants have provided no explanation as to how they were induced to sign the lockbox portion of the Forbearance Agreement through misrepresentation, when they have already been found, implicitly, by the Maryland courts, to have not been subjected to the same sort of misrepresentation when they signed the confessed judgment portion of the agreement. Because these defenses would have served as defenses against the entire Forbearance Agreement if they had been raised before the Maryland courts, Defendants are precluded from raising them now.

Defendants' fifth affirmative defense is breach of fiduciary duty. *See* Answer at 4. Defendants claim that "[t]hrough the execution of the forbearance agreement and Presidential taking excessive control of Borrowers' business, business affairs and business income, Presidential created a trust between itself and Defendants." Answer at 4. Defendants believe that due to this relationship of trust, "it was important for Presidential as a fiduciary to disclose all facts which could be considered material even if not expressly asked about," including "that the agreement had confession judgment provisions, waiver of borrower's rights provisions and gave Presidential total control of borrowers' business, business affairs and business income." *Id.* Additionally, according to Defendants, this relationship "arguably created a potential and/or actual conflict of interest with the borrowers." *Id.*

This affirmative defense seems to more squarely counter the validity of the lockbox agreement than the validity of the confessed judgment. It was through the lockbox agreement that Presidential created the purported fiduciary relationship with Defendants, by gaining control over Defendants' rents to use to pay off its debt. However, this defense could also have been used to challenge the confessed judgment once it had been vacated. After all, it was this alleged breach of fiduciary relationship that Defendants claim caused it to default on the Forbearance Agreement, allowing Presidential to procure the confessed judgment against them. Because this defense could have been raised during the Maryland litigation, Defendants are precluded from asserting here.

Defendants' eighth defense is unconscionable dealing and conduct. Answer at 6. Defendants argue that "Presidential's *unconscionable* contract is unenforceable because no reasonable or informed person would otherwise agree to it." *Id.* (emphasis in original). It further argues that "Presidential, the perpetrator of the conduct, should not be allowed to benefit, because the consideration offered is lacking, or is so obviously inadequate, that to enforce the contract would be unfair to the borrowers." *Id.* Defendants relate this defense to their eleventh affirmative defense, contract of adhesion, by explaining that "Presidential offered borrowers a standardized forbearance contract of adhesion for the extension of mortgage credit under threat of foreclosure and on a 'take it or leave it' basis, without giving borrowers realistic opportunities to negotiate terms that would benefit their interests." *Id.*; *see also id.* at 8. Defendants also concede that this defense was partially litigated in Maryland. *See* Defs.' Opp'n Summ. J. at 15 ("This Eighth Affirmative Defense is predicated upon Defendants' rights to seek relief in the courts and thus relied upon the unconscionability of the confessed judgment language."); *see also id.* at 2 ("Defendants agree that should an affirmative defense rest on the nexus of

unconscionability and 'confessed judgment,' that defens[]e should be stricken."). However, because courts may not treat motions for summary judgment as "conceded" for want of opposition, the Court evaluates whether Defendants' eighth affirmative defense is actually barred by res judicata. *See Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 508 (D.C. Cir. 2016).

"A contract of adhesion has been defined as one 'that is drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms.'" *Meyer v. State Farm Fire & Cas. Co.*, 582 A.2d 275, 278 (Md. Ct. Spec. App. 1990) (quoting Restatement (Second) of Conflict of Laws § 187, Comment b). However, "[t]he fact that a contract is one of adhesion does not mean that either it or any of its terms are invalid or unenforceable." *Id.* Courts "will refuse to enforce terms that it finds unconscionable and will construe ambiguities against the draftsman; but it will not simply excise or ignore terms merely because, in the given case, they may operate to the perceived detriment of the weaker party." *Id.*

It is clear that these defenses could appropriately have been raised during the Maryland proceedings. The defense that a contract was a contract of adhesion can be raised to vacate a confessed judgment in Maryland, as can unconscionability. *See Md.-Nat'l Capital Park & Planning Comm'n v. Wash. Nat'l Arena*, 386 A.2d 1216, 1233 (Md. Ct. Spec. App.) (citing *D. H. Overmeyer Co. v. Frick Co.*, 405 U.S. 174, 185 (1972)). If the confessed judgment clause should not have been enforced because the contract was unconscionable or a contract of adhesion, Defendants could have raised and argued that possibility when it asked the Circuit Court judge to vacate the confessed judgment. And because whether a contract is a contract of adhesion applies to the entire contract, the fact that the Maryland court did not find this contract to be one precludes this Court from finding the Forbearance Agreement to be one now.

Defendants also claim that the forbearance and lockbox agreements should be voided due their impracticability or impossibility. *See* Answer at 7. In particular, Defendants claim that because Presidential would not disburse income from the operating accounts to make "ordinary and necessary property repairs," it became impossible for Defendants to maintain their properties and continue operating their businesses. Defs.' Opp'n Summ. J. at 16. Additionally, they argue that because Presidential did not pay Defendants' loans, as they were supposed to, with the money in the operating accounts, they caused Defendants to default on their loans. *See id.* Defendants' contentions regarding Presidential's contribution to their default, based on the structure of the Forbearance Agreement, could have been raised in the Maryland courts to challenge Defendants' liability for the confessed judgment. If the contract, including the lockbox agreement, was impossible to comply with, leading to Defendants' default, the Maryland court could have voided the contract if Defendants had also successfully moved to vacate the confessed judgment. Because this defense was an appropriate means to fight the confessed judgment, and the rest of the Forbearance Agreement, in Maryland, Defendants are precluded from raising it here.

Defendants' final challenged affirmative defense is anticipatory breach. Defendants claim that after they had entered into the Forbearance Agreement with Presidential, "Presidential told borrowers that it d[id] not intend to live up to its obligations under the contract" by timely paying Defendants' mortgage and insurance, thereby repudiating the contract. Answer at 8. An anticipatory breach of contract is "when in anticipation of the time of performance one definitely and specifically refuses to do something which he is obliged to do, so that it amounts to a refusal to go on with the contract," in which case "the other party may, at his election, treat that contract as abandoned, and act accordingly." *Weiss v. Sheet Metal Fabricators, Inc.*, 110 A.2d 671, 675

(Md. 1955). It is clear from Defendants' recounting of events leading up to the deterioration of its contractual relationship with Presidential that this defense could have been raised in both the Maryland case for the confessed judgment and this case for conversion in violation of the lockbox agreement. If Presidential had definitively told Defendants that it would not be complying with its obligations under the Forbearance Agreement, then that statement could have been used as a challenge to its default that precipitated the confessed judgment, as well as its decision to stop depositing its rents into the operating accounts pursuant to the lockbox agreement. Because this defense was applicable to both the Maryland and the D.C. ligation, it is barred by res judicata.

## IV. MOTION TO STRIKE JURY DEMAND

Presidential has also moved to strike the jury demand included in Defendants' Affirmative Defenses, Answers, and Counterclaims, arguing that because the Forbearance Agreement, which included a jury waiver clause, has been deemed enforceable in the Maryland courts, a challenge to the jury waiver clause is barred by res judicata. *See* Mem. P. & A. Supp. Pl.'s Renewed Mot. Strike Jury Demand ("Mot. Strike") at 5–6, ECF No. 47-1. It also points to the numerous other agreements Defendants entered into with Presidential that included jury waiver clauses to demonstrate that Defendants' agreement to waive their right to a jury trial in the Forbearance Agreement was knowing and voluntary. *Id.* Defendants respond that because Presidential's alleged misconduct when Defendants entered into the Forbearance Agreement was so egregious, Defendants did not enter into the forbearance agreement voluntarily, and therefore their jury waiver should be invalidated. Defs.' Opp'n Mot. Strike at 3, ECF No. 49. They also argue that because the Forbearance Agreement "remain[s] offensive to public policy and will be shown to be unfair in a trial on the merits," the jury waiver clause should not be upheld. *Id.* at 4.

For the reasons explained below, the Court finds that Defendants knowingly and voluntarily waived their right to a trial by jury, and therefore, the Court grants Presidential's Motion to Strike.

### A. Legal Standard

In diversity as well as other actions, "[t]he right to a jury trial in the federal courts is to be determined as a matter of federal law[.]" *Simler v. Conner*, 372 U.S. 221, 222 (1963). "Parties, at least in situations where summary procedure is clearly to be desired, may in advance contract to waive a trial by jury." *Rodenbur v. Kaufmann*, 320 F.2d 679, 684 (D.C. Cir. 1963). However, "[c]ourts will indulge every reasonable presumption against waiver of a jury trial." *Id.* at 683. "Those cases in which the validity of a contractual waiver of jury trial has been in issue have overwhelmingly applied the knowing and voluntary standard." *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 762, 756 (6th Cir. 1985) (citations omitted). "[T]he Sixth Circuit has held that the party objecting to the jury waiver provision has the burden of demonstrating that its consent to the provision was not knowing and voluntary," while "courts in the Second, Fourth, and Tenth Circuit have held that the party seeking to enforce a jury waiver provision has the burden of proof that consent to the provision was knowing and voluntary." 92 A.L.R. Fed. 688 (last updated 2016) (originally published in 1989). Courts considering whether a jury waiver was voluntarily entered into "consider, among other matters, how conspicuous the waiver was within the document, the relative bargaining power of the parties, the business or professional experience of the party opposing the waiver, the parties' ability to read and comprehend the consequences of waiver, and whether the contract, and in particular the waiver provision, was the subject of negotiation." *Fed. Trade Comm'n v. Capital City Mortg. Corp.*, No. 98-237, 2001 WL

36132732, at *2 (D.D.C. Mar. 14, 2012) (citing *Leasing Serv. Corp. v. Crane*, 804 F.2d 828, 833 (4th Cir. 1986)).

While the D.C. Circuit has not addressed who bears the burden of proof in challenging or sustaining contractual jury waivers, courts in this District have applied the knowing and voluntary standard used in other Circuits. *See, e.g.*, *Capital City Mortg. Corp.*, 2001 WL 36132732, at *1. This Court will adopt that standard as well, and, because courts should "indulge every reasonable presumption against waiver of a jury trial," *Rodenbur*, 320 F.2d at 683, will hold the movant to the burden of proving that the jury waiver was knowingly and voluntarily entered into.

## B. Analysis

As mentioned above, Presidential has put forth two major arguments in support of its motion to strike. First, it argues that every ground on which Defendants' could challenge the enforceability of the jury waiver are barred by res judicata. Second, it argues that Defendants' long history of signing away their right to a jury trial demonstrates that they entered into this jury waiver knowingly and voluntarily. While the question of whether the jury waiver was knowingly and voluntarily entered into is more complex than Presidential argues it is, Presidential is correct that Defendants' demand for a jury trial cannot be granted.

While duress and fraud, which Defendants are now barred from raising due to res judicata, *see supra* Section IV.A, are possible grounds upon which courts may invalidate contractual jury waivers, courts must take other factors, which would not have been properly raised in a challenge to the confessed judgment provision, into consideration as well. For example, examining the Forbearance Agreement, the Court notes that the jury waiver clause is printed in bolded text, and is placed next to one of the most important clauses in the contract, the

confessed judgment clause, which itself is printed in bold with all capital letters. *See* Forbearance

Agreement at 9. Additionally, the jury waiver states in plain, easily understandable language that

by signing the Forbearance Agreement, Defendants would be waiving their right to a trial by jury

in any litigation arising out of the Forbearance Agreement. *Id.* Even if Defendants were not

represented by an attorney at the time—although the Forbearance Agreement itself indicates that

they were supposed to be, *see id.* at 10—Defendants have provided no explanation as to why this

jury waiver, when compared to the dozen other jury waivers they signed, was any more

incomprehensible to Mr. Green than the others, or why, given Mr. Green's long history of

signing away his right to a jury trial should a dispute regarding his loans from Presidential arise,

this jury waiver agreement should be considered any less knowing or voluntary. Because

Presidential has demonstrated, by virtue of its successful res judicata argument and by

highlighting of Defendants' long history of waiving their right to a jury trial, that the jury waiver

provision in the Forbearance Agreement was entered into knowingly and voluntarily,

Presidential's Motion to Strike Defendants' Jury Demand is granted.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's Renewed Motion for Partial Summary Judgment

(ECF No. 48) and Plaintiff's Motion to Strike Jury Demand (ECF No. 47) are **GRANTED**.  An

order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: July 9, 2018                                                    RUDOLPH CONTRERAS
                                                                       United States District Judge